## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

JERRY D. SELLERS, JR.,

        **Petitioner,**

     **v.**                     **CASE NO. 19-3259-SAC**

DON LANGFORD,

        **Respondent.**

### MEMORANDUM AND ORDER

This matter is a petition for habeas corpus filed under 28 U.S.C. § 2254. Petitioner, a Kansas prisoner who is proceeding pro se, challenges his convictions in the District Court of Harvey County, Kansas, of two counts of aggravated indecent liberties with a child.

### Nature of the petition

Petitioner seeks relief from his convictions, alleging that (1) he received ineffective assistance of counsel, (2) the state district court violated his constitutional due process rights when it found his trial counsel effective and when it denied his motion for a psychological evaluation of the victim, (3) the State violated his constitutional due process rights when the prosecutor introduced improper testimony, (4) cumulative error requires reversal, and (5) he is actually innocent.

**Procedural background**

In May 2008, a jury convicted Petitioner of two counts of aggravated indecent liberties with a child and the district court sentenced him to a controlling term of 131 months in prison with lifetime postrelease supervision and lifetime electronic monitoring. *State v. Sellers*, 292 Kan. 346, 348 (2011) (*Sellers I*). On direct appeal, the Kansas Supreme Court (KSC) rejected most of Petitioner's arguments but agreed with Petitioner that the district court erred in ordering lifetime electronic monitoring, so it vacated that portion of his sentence. *Id.* at 363.

Petitioner then filed a motion for state habeas relief under K.S.A. 60-1507. *Sellers v. State*, 2014 WL 2589785 (Kan. Ct. App. 2014) (unpublished opinion) (*Sellers II*), *rev. denied* April 28, 2015. The district court held an evidentiary hearing on April 15, 2012, after which it denied relief. *Id.* at *1-2. Petitioner appealed, but the Kansas Court of Appeals (KCOA) denied relief and, on April 28, 2015, the KSC denied review. *Id.* at *3.

Meanwhile, on October 10, 2012, while that appeal was pending, Petitioner filed in state court a motion to arrest judgment under K.S.A. 22-3503, arguing that a defective charging document deprived the district court of jurisdiction to convict him. *State v. Sellers*, 301 Kan. 540, 543, (2015) (*Sellers III*). The district court denied the motion and, when Petitioner appealed, the KCOA dismissed for lack of jurisdiction. *Id.* at 543. The KSC granted review and

reversed the KCOA, reinstating the appeal. *Id.* at 545. Rather than remand, however, the KSC addressed the merits of the appeal and, on March 6, 2015, it affirmed the district court. *Id.* at 548.

On June 17, 2015, Petitioner filed a second K.S.A. 60-1507 motion. *Sellers v. State*, 2018 WL 4939086, *2 (Kan. Ct. App. 2018) (unpublished opinion) (*Sellers IV*), *rev. denied* Sept. 27, 2019. The district court summarily denied the motion as successive. *Id.* Petitioner appealed, but the KCOA affirmed the denial and the KSC denied review on September 27, 2019. *Id.* at *2, 5.

On December 18, 2019, Petitioner filed in this Court his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The Court conducted a preliminary review of the petition and ordered Petitioner to show cause why this matter should not be dismissed as untimely. (Doc. 4.) After receiving a response from Petitioner, the Court ordered Respondent to file a limited pre-answer response regarding timeliness. (Docs. 5, 6.) Respondent advised the Court that he believes the matter was timely filed and would not raise timeliness as a defense. (Doc. 9.) Accordingly, the Court ordered Respondent to show cause why the writ should not be granted. (Doc. 10.) Respondent filed his answer on January 21, 2022. (Doc. 21.)

Petitioner filed his traverse on July 5, 2022.[1] (Doc. 29.) The

---

[1] The following day, Petitioner filed a motion to correct his traverse, seeking to remove a portion of one sentence on page 3 of the traverse. (Doc. 30.) The Court granted the motion and, as noted in the order granting the motion, the

Court has carefully considered the traverse. Therein, for the first time, Petitioner raises additional arguments of systemic inadequacies in Kansas' post-conviction review system. (Doc. 29, p. 2.) It is well-established that "[c]ourts routinely refuse to consider arguments first raised in a habeas traverse." *Martinez v. Kansas*, No. 5-3415-MLB, 2006 WL 3350653, *2 (D. Kan. Nov. 17, 2006) (unpublished order) (collecting cases); *See also LaPointe v. Schmidt*, No. 14-3161-JWB, 2019 WL 5622421, *5 (D. Kan. Oct. 31, 2019) (unpublished memorandum and order) (striking new claim from traverse). If the Court were to allow Petitioner to raise new legal arguments in the traverse, it would then need to allow Respondent the opportunity to respond to them. This type of sur-reply is neither contemplated by the applicable rules nor conducive to reaching finality of briefing in federal habeas matters. *See Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, *1 (D. Kan. Sept. 23, 1998). For these reasons, the Court will not address arguments raised for the first time in the traverse.

### Factual background

The KSC made the following findings of fact regarding the events that led to Petitioner's prosecution[2]:

> Sellers lived with C.M. and her 13-year-old daughter, M.R.C., in C.M.'s home. Sellers and C.M. had previously been deployed together in the Army National Guard,

---

Court has taken the correction into account while considering the arguments in Petitioner's traverse. (Doc. 31.)

[2] The Court has noted and considered the additional facts alleged in the traverse, but finds that reciting them here is not necessary for resolution of this matter.

4

serving in Kuwait. Sellers' relationship with M.R.C. became strained, and C.M. and M.R.C. began to argue about him. The worst of these arguments occurred in early December 2007.

On December 3, 2007, C.M. went to her sister's home to talk about the situation. C.M. asked her sister to try to talk to M.R.C. to find out what was bothering her. The sister did as asked the same evening while making dinner with M.R.C. When M.R.C. learned from the sister that Sellers was going to ask C.M. to marry him, M.R.C. told the sister that Sellers had touched her. Upon urging by the sister, M.R.C. also told C.M. that Sellers had touched her "up top and down below."

Later that evening, C.M. told Sellers that M.R.C. had said he touched her breast and "down there." C.M. told Sellers she would get him some help. When Sellers left for work the next morning, however, C.M. took M.R.C. to the police station to report the incident.

C.M. and M.R.C. arrived at the police station at 6 a.m. and met with Officer Joshua Lowe to give an initial report. Lowe interviewed C.M. and M.R.C. and prepared a report before referring the case to a detective for further investigation.

M.R.C. reported that Sellers put his hands up her shirt and felt her chest and touched her on her pubic area. Lowe asked a series of yes/no follow-up questions, including whether "Jerry had put his hands down her pants." M.R.C. said Sellers had not done so. M.R.C. believed that the touching incident occurred around Saturday, November 17, 2007. Lowe asked M.R.C. if she was home alone with Sellers when the touching occurred, and she replied that she was. In addition, in response to Lowe's question about how Sellers went about touching her, M.R.C. said that Sellers just walked up and touched her.

Lowe eventually would testify that his purpose with the initial interview was to get enough information to see if the matter warranted calling in a detective to conduct a forensic interview.

At 10 a.m. the same day as the Lowe interview, Detective Michael Yoder interviewed M.R.C. at the Heart to Heart Advocacy Center. M.R.C. told Yoder that she did

not get along with Sellers and worried that he would divert her mother's affection. M.R.C. also told Yoder that the touching incident occurred around Thanksgiving; she thought it happened on November 16.

Describing the incident, M.R.C. told Yoder that between 10 a.m. and 11 a.m., she went to lie down with her mother on her mother's bed. M.R.C. lay on one side of the bed and her mother on the other, and the two held hands. Sellers joined them on the bed, lying between M.R.C. and her mother with his head level with M.R.C.'s waist. Sellers put his arm over M.R.C.'s leg, then moved his hand so it was between M.R.C. and the mattress, and then moved it from touching her stomach to her chest. M.R.C. told Yoder that when Sellers' hand had reached her breast, he moved his hand around over her breast. Sellers then stopped touching M.R.C. and left the room to go check on the family's dog, which was making noise in another room.

M.R.C. told Yoder that Sellers then came back into the room, checked to see if her mother was asleep, lay back down, and put his hand on M.R.C.'s leg. He moved his hand up to M.R.C.'s pubic area. Sellers then got off the bed again and walked over to her mother's side of the bed to see if she was still asleep. He then walked to M.R.C.'s side of the bed and started to push M.R.C.'s shirt up. At that point, M.R.C. squeezed her mother's hand and woke her up.

Yoder asked M.R.C. if there had been any other incidents in which Sellers touched her inappropriately; and she said there was another incident the previous Halloween. M.R.C. said that Sellers touched her on her buttocks when she, Sellers, and her mother were cooking in the kitchen. M.R.C. also reported a third incident, in which she hugged Sellers goodnight and he grabbed her on the buttocks.

292 Kan. at 348-50. Additional facts are included in the analysis below as needed.

## Analysis

Petitioner seeks habeas corpus relief on the following

grounds:   (Ground 1) He received ineffective assistance from counsel from Michael Whalen, who was appointed counsel during Petitioner's first 60-1507 proceedings, both in the district court and on appeal; (Ground 2) the district court violated Petitioner's constitutional due process rights by denying his second 60-1507 motion, which alleged Whalen's ineffectiveness; (Ground 3) the district court violated Petitioner's constitutional due process rights by denying his first 60-1507 motion, which alleged ineffective assistance of trial counsel; (Grounds 4, 5, and 6) Petitioner received ineffective assistance from trial counsel; (Ground 7) the district court violated Petitioner's constitutional due process rights by denying his motion for an evaluation of M.R.C.; (Ground 8) the State violated Petitioner's constitutional due process rights when the prosecutor elicited improper testimony; (Ground 9) cumulative error denied Petitioner his constitutional rights to a fair trial and due process of law; and (Ground 10) Petitioner is actually innocent.

Before discussing the merits of Petitioner's arguments, the Court will address preliminary issues regarding Petitioner's claims.

**Voluntary Dismissals**

**Grounds 1, 2, and 10**

Petitioner has agreed in his traverse to dismiss Grounds 1, 2, and 10. (Doc. 29, p. 3; Doc. 30, p. 4.). Accordingly, the Court

will dismiss these asserted grounds for relief.[3] As Petitioner requests, however, the Court will consider the arguments within Grounds 1, 2, and 10 to the extent that they may create cause to excuse procedural defects.

**Failure to State a Claim on Which Relief Can Be Granted**

   **Ground 7**

In Ground 7, Petitioner argues that his constitutional due process rights were violated when the district court denied his motion for a psychological evaluation of M.R.C.[4] Respondent argues that the KSC's decision on this issue in Petitioner's direct appeal was based on state law and, as such, cannot be grounds for federal

---

[3] The Court also notes that in the alternative, Ground 1 would be dismissed because it is based on the ineffectiveness of counsel during his 60-1507 proceedings, which, under 28 U.S.C. § 2254(i), "shall not be a ground for relief in a proceeding arising under section 2254." Ground 2 would be dismissed for failure to state a claim on which federal habeas relief can be granted because the Kansas courts relied solely on state law to affirm the denial of Petitioner's 60-1507 motion as untimely and successive. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "'To the extent [the petitioner] argues the state court erroneously interpreted and applied state law, that does not warrant habeas relief[.]'" *Hawes v. Pacheco*, 7 F.4th 1252, 1264 (10th Cir. 2021)(quoting *Boyd v. Ward*, 179 F.3d 904, 916 (10th Cir. 1999)). Similarly, Ground 10 would be dismissed for failure to state a claim on which relief can be granted because it asserts only Petitioner's actual innocence. *See Farrar v. Raemisch*, 924 F.3d 1126, 1131 (10th Cir. 2019) ("'[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings.'") (quoting Herrera v. Collins, 506 U.S. 390, 400 (1993)).

[4] Although Petitioner in his traverse attempts to reframe Ground 7 as setting forth "violations of Constitutional Amendments Sixth and Fourteenth" because the Kansas courts allegedly misapplied the standard for ineffective assistance of counsel (Doc. 29, p. 3), that is not how he framed this argument in his petition. There, he argued that he "was denied due process of law under the Fourteenth Amendment to the United States Constitution when the district court erred in denying Sellers' motion for an evaluation of MRC because credibility was the disputed fact that decided the case." (Doc. 1, p. 42.) Rather than attacking counsel's actions, Ground 7 in the complaint challenged the district court's denial of the motion for a psychological evaluation. *Id.* at 42-43.) Petitioner may not now alter his claim for relief.

habeas relief. In the direct appeal, the KSC stated:

> The district judge also took up Sellers' motion for
> the psychological evaluation of M.R.C. at the second
> preliminary hearing. Sellers argued that M.R.C. did not
> tell anyone about the incidents until weeks after they
> occurred; that there was no corroborating evidence; that
> M.R.C. and Sellers were having a lot of problems and that
> M.R.C. had been worried Sellers would take her mother
> away; and that the first preliminary hearing supported a
> need for counseling for M.R.C. The State responded by
> reviewing factors outlined in *State v. Price,* 275 Kan.
> 78, 61 P.3d 676 (2003), contending that M.R.C. did not
> demonstrate mental instability; that she did not
> demonstrate a lack of veracity; that she had not made
> similar charges in the past; that Sellers' motion was
> merely a fishing expedition; that no other reasons
> existed to submit M.R.C. for evaluation; and that M.R.C.
> did not demonstrate difficulty with telling the truth.
> The district judge found M.R.C. credible, having seen her
> testify at both preliminary hearings. The judge also
> found that Sellers overstated the friction between
> himself and M.R.C. and that there was no history of mental
> instability on the part of M.R.C. The judge thus denied
> Sellers' motion.

*Sellers I*, 292 Kan. at 351.

The KSC cited only Kansas state law in its analysis of
Petitioner's argument "that the district judge erred in denying his
motion for a psychological evaluation of M.R.C." *See* 292 Kan. at
353-56. It cited the case that first held that a Kansas district
court judge may, under certain circumstances, order a psychiatric
evaluation of the complaining witness in a sexual offense case. *Id.*
at 353. (citing *State v. Gregg*, 226 Kan. 481 (1979)). The
nonexclusive list of factors used when considering the required
circumstances exist was established through Kansas caselaw. *Id.* at
353-54 (quoting *State v. Berriozabal*, 291 Kan. 568, 568 (2010)).

And the KSC compared the circumstances in *Sellers* to those in another case, *State v. Price*, 275 Kan. 78 (2003).

"[I] is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner has provided no legal authority to this Court that supports his assertion that the denial of a motion for psychological examination of an alleged victim violates the federal constitutional right to due process.[5] Because Ground 7 asserts only that the state courts "'erroneously interpreted and applied state law, [it] does not warrant habeas relief[.]'" S*ee Hawes v. Ward*, 7 F.4th 1252, 1264 (10th Cir. 2021) (quoting *Boyd v. Ward*, 179 F.3d 904, 916 (10th Cir. 1999)). Thus, because the decision which Ground 7 challenges was based only on state law, Ground 7 fails to state a claim upon which federal habeas relief may be granted.

**Exhaustion**

A habeas petitioner generally must exhaust available state court remedies before seeking federal habeas relief. "'A threshold question that must be addressed in every habeas case is that of exhaustion.'" *Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021)

---

[5] Similarly, although Petitioner summarily argues in his petition that the denial of his motion hindered his ability to cross-examine witnesses, he does not further explain how his federal confrontation rights were violated. Contrary to Petitioner's argument, he does not have "the right to show any element or level of bias, prejudice, or interest of [his victim] through various evidentiary sources, such as a psychological [evaluation]." (See Doc. 1, p. 43.) The numerous rules of evidence at the state and federal level provide guidelines for which evidence is admissible at trial and which is not.

(quoting *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994)).
At all times relevant to Petitioner's state-court litigation,
"[t]he exhaustion requirement is satisfied if the federal issue has
been properly presented to the highest state court, either by direct
review of the conviction or in a postconviction attack." *Dever v.
Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). The
presentation of a claim "requires that the petitioner raise in state
court the 'substance' of his federal claims." *Williams v. Trammell*,
782 F.3d 1184, 1210 (10th Cir. 2015).

**Ground 4**

As Ground 4, Petitioner asserts that his trial counsel provided
unconstitutionally ineffective assistance of counsel by failing to
procure funding for and obtain "expert witnesses in child
interviewing techniques, child psychology/psychiatry, and a medical
physician as to common characteristics and behaviors of sexually
abused children along with limitations of the human body." (Doc. 1,
p. 12.) Petitioner asserts that Ground 4 was fully exhausted in the
appeal from the denial of his first 60-1507 motion. *Id.* at 12-13.

Petitioner's brief to the KCOA in the appeal of the denial of
his first 60-1507 motion focused on trial counsel's lack of efforts
to obtain funding for and retain an expert on child interviewing
techniques to testify at trial. Reflecting this focus, the KCOA
identified the issue before it as whether trial counsel "failed to
adequately represent [Petitioner] by not retaining an expert to

testify at trial to the effect that law enforcement officers questioned M.R.C. in an unduly suggestive manner, thereby inducing her to make false accusations of sexual misconduct." *See also Sellers II*, 2014 WL 2589785, at *1. When a petitioner raised a claim of ineffective assistance of counsel in the state court but "based it on different reasons than those expressed in his [federal] habeas petition," the bases which were not raised in the state court have not been exhausted. *Smallwood v. Gibson*, 191 F.3d 1257, 1267 (10th Cir. 1999). Thus, the only argument in Ground 4 that was exhausted in the state courts is that trial counsel was ineffective for failing to obtain funding for and retain for trial an expert witness on child interviewing techniques.

**Grounds 3, 5, 6, and 8**

In Ground 3, Petitioner asserts that the district court violated his Fourteenth Amendment Due Process rights when it improperly relied on a personal endorsement of trial counsel's professional conduct to deny Petitioner's 60-1507 motion alleging ineffective assistance of trial counsel. In Ground 5, Petitioner argues that trial counsel was ineffective for failing "to investigate and prepare a defense" based on phone and text logs from the victim and her mother, along with surveillance video from Walmart that Petitioner believes would have proven he did not commit the crimes with which he was charged. In Ground 6, Petitioner argues that trial counsel was ineffective for failing to request a trial

continuance after the State rested its case-in-chief so trial counsel could investigate the trial testimony of the victim and her mother and prepare a defense better tailored to their trial testimony. In Ground 8, Petitioner argues that the State presented perjured testimony and used it to bolster the credibility of State witnesses.

Petitioner asserts that he raised Grounds 3, 5, and 6 in the state district courts but he concedes he did not raise them to the state appellate courts.[6] (Doc. 1, p. 11, 14-16.) He also acknowledges that Ground 8 was not raised in the state courts, a failure he attributes to post-conviction counsel. *Id.* at 19, 23-24. Because the exhaustion doctrine requires Petitioner to have raised issues to the highest state appellate court, Grounds 3, 5, 6, and 8 were not exhausted.

In summary, the records and files now before the Court show that Grounds 3, most of Ground 4, and Grounds 5, 6, and 8 were not exhausted in the state courts. *See Sellers I*, 292 Kan. at 348 (identifying issues before the KSC); *Sellers III*, 2014 WL 2589785, at * 1 (identifying "the narrow issue on appeal" in the first 60-1507); *Sellers IV*, 2018 WL 4939086 (discussing only timeliness and

---

[6] Although Petitioner briefly mentioned in his petition for review by the KSC that the district court's finding that trial counsel "was such a good attorney" was not supported by the record, Kansas Supreme Court Rule 8.03(b)(6)(C)(i) states that "[t]he Supreme Court will not consider issues not raised before the Court of Appeals," even though it "may address a plain error not presented." Thus, this reference to the district court's reliance on its personal knowledge of trial counsel's quality of work was not sufficient for exhaustion purposes.

successive nature of second 1507).

**Anticipatory Procedural Bar**

> "Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies. However, dismissal without prejudice for failure to exhaust state remedies is not appropriate if the state court would now find the claims procedurally barred on independent and adequate state procedural grounds."

*Grant v. Royal*, 886 F.3d 874, 891-92 (10th Cir. 2018) (internal citations and quotation marks omitted).

If Petitioner attempted to return to state court to exhaust the unexhausted claims in Grounds 3, 4, 5, and 6, he would do so under K.S.A. 60-1507. K.S.A. 60-1507(c) states: "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." K.S.A. 60-1507(f) sets forth the one-year time limitation on filing 60-1507 motions. Because the KCOA has already held that Petitioner's most recent 60-1507 motion was untimely and successive, it is likely that it would find any future 60-1507 motions to be the same.

Similarly, Ground 8 alleges a trial error, which generally must be asserted on direct appeal. *See* Kan. S. Ct. Rule 183(c)(3) ("Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal."). Petitioner's direct appeal concluded more than 10 years ago and there do not appear to

be any extraordinary circumstances that excuse the failure to raise Ground 8 in the direct appeal.[7]

Thus, this Court concludes that if Petitioner attempted to return to state court to exhaust the currently unexhausted arguments now presented in Grounds 3, 4, 5, 6, and 8, he likely would have no procedural avenue by which to do so. This renders the claims "technically exhausted because, in the habeas context, 'state-court remedies are . . . "exhausted" when they are no longer available, regardless of the reason for their unavailability.'" *Shinn v. Ramirez*, 142 S. Ct. 1719, 1732 (2022) (quoting *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006)). Accordingly, the Court applies an anticipatory procedural bar, or procedural default, to Grounds 3, the portions of Ground 4 other than those related to experts on child interviewing, and Grounds 5, 6, and 8. *See Grant*, 886 F.3d at 892 ("Where the relevant state courts would now find those claims procedurally barred, there is a procedural default for purposes of federal habeas review.").

To overcome this anticipatory procedural bar and allow the Court to reach the merits of these arguments, Petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the

---

[7] Although ineffective assistance of counsel can qualify as an exceptional circumstance that justifies failing to raise an issue on direct appeal, *see Rowland v. State*, 289 Kan. 1076, 1087 (2009), Petitioner has never argued to the state courts that his counsel during direct appeal provided ineffective assistance and the time for that claim has expired. *See* K.S.A. 60-1507.

failure to consider the claims will result in a fundamental miscarriage of justice." *Id.*

### Cause and Prejudice

To demonstrate cause, Petitioner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rules." *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). If Petitioner fails to demonstrate cause, the Court need not consider whether he can establish the requisite prejudice. *See Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995).

In his petition, Petitioner explains that he is "not trained nor practices law and therefore did not know this at the time of filing [the] 60-1507." (Doc. 1, p. 23.) The Tenth Circuit has held that assertions that a petitioner is not a lawyer and was unaware of the legal basis for a claim "are insufficient as a matter of law to constitute cause to excuse a procedural default. *See Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995). Thus, Petitioner's lack of legal training does not constitute cause to excuse his procedural default.

In his traverse, Petitioner argues that his 60-1507 counsel was ineffective by failing "to present those claims that were meritorious." (Doc. 29-1, p. 4.) He contends that this ineffectiveness constitutes the cause required for this Court to reach his procedurally defaulted claims. As Petitioner points out, the United States Supreme Court has held that "a procedural default

16

will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial, if in the state's initial review collateral proceeding there was no counsel or counsel was ineffective." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). (Doc. 29-1, p. 3.) Stated another way, "ineffective assistance of state postconviction counsel may constitute 'cause' to forgive procedural default of a trial-ineffective-assistance claim, but only if the State requires prisoners to raise such claims for the first time during state collateral proceedings." *Shinn*, 142 S. Ct. at 1733. Kansas generally enforces that requirement. *See State v. Dull*, 298 Kan. 832, 839 (2014) (holding that claims of ineffective assistance of trial counsel "ordinarily are not addressed for the first time on direct appeal").

For ineffective assistance of counsel to constitute "cause" that excuses a procedural default,

> "the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" which "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."

*Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Thus, for Petitioner to use ineffective assistance of counsel as cause to excuse his procedural default, *that* ineffective assistance of counsel claim must have been presented to the state courts.

In his second 60-1507 proceeding, Petitioner argued that

counsel in his first 60-1507 counsel provided ineffective assistance. The KCOA rejected his arguments. In addition to holding that Petitioner's arguments in his second 60-1507 motion largely mirrored those made in his first 60-1507 motion, so the district court had not erred in finding it successive, the KCOA held that "[t]he alleged ineffectiveness of Sellers' 60-1507 counsel is unpersuasive." *Sellers III*, 2018 WL 4939086, at *3. The KSC denied Petitioner's petition for review.

"When there exists no successful ineffective-assistance-of-counsel claims, the argument of ineffective assistance of counsel may not be used to support an argument of cause to avoid procedural default." *Prater v. Haddon*, 2022 WL 671208, *4 (D. Utah Mar. 7, 2022) (citation omitted), appeal filed Mar. 7, 2022; *see also Thompson v. Benzon*, 2021 WL 4060942, *5 (D. Utah Sept. 7, 2021), appeal filed Sept. 24, 2021.

Petitioner contends that the KCOA erred by finding his motion was successive and untimely. (Doc. 29-1, 21-22.) Be that as it may, the KCOA found unpersuasive Petitioner's arguments that his 60-1507 counsel provided ineffective assistance. Federal courts sitting in habeas review of state-court decisions do not review state courts' decisions on the effectiveness of postconviction counsel. *See* 28 U.S.C. § 2254(i). Petitioner provides no legal authority for this Court to undertake that review--which statutorily cannot provide an independent basis for federal habeas relief-—and determine whether

Petitioner has shown cause for the procedural default of a claim on which he hopes to obtain federal habeas relief. Without such legal authority, the Court will not examine the KCOA's holding that Petitioner had not persuasively argued ineffective assistance of 60-1507 counsel.

### Fundamental Miscarriage of Justice

Liberally construing the petition, as is appropriate since Petitioner proceeds pro se, it also asserts that the failure to consider the procedurally defaulted claims will result in a fundamental miscarriage of justice. The "fundamental miscarriage of justice" exception is available only in the "extraordinary" case of one who is "innocent of the crime." *Gilbert v. Scott*, 941 F.3d 1065, 1068 n.2 (10th Cir. 1991). To support a claim of actual innocence, Petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *See Schlup v. Delo*, 513 U.S. 298, 327 (1995). Ordinarily, this exception "requires [the] petitioner to support his allegation of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.

Petitioner alleges that he is actually innocent of the crimes of conviction in this case and thus "he is entitled to a full consideration of his claims regardless of the procedural posture in

which they are raised if he presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial proceedings." (Doc. 1, p. 29.) Petitioner asserts that he has continually "proclaimed his innocence" and has shown "deep flaws" in the proceedings, including ineffective assistance of his counsel, prosecutorial errors, and errors by the state courts. *Id.* He has not, however, identified any "new reliable evidence" that was not presented at trial and in light of which "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *See Schlup*, 513 U.S. at 324, 327.

In summary, for the reasons explained above, the Court applies an anticipatory procedural bar to the arguments made in Grounds 3, 5, 6, and 8, and to the arguments in Ground 4 except for those related to experts on child interviewing techniques. Because Petitioner has not made the required showing of cause and prejudice or that declining to address these Grounds will result in a fundamental miscarriage of justice, he has not overcome the anticipatory procedural bar and the Court may not consider the merits of these asserted grounds for relief. The merits of the remaining asserted grounds for relief—a portion of Ground 4 and all of Ground 9—are addressed below.

### Standard of Review

This matter is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, when a state court has

adjudicated the merits of a claim, a federal court may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).[8]

The Tenth Circuit has explained:

> [A] state-court decision is "contrary to" the Supreme Court's clearly established precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from that precedent."

*Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-08 (2000)).

In this context, an "unreasonable application of" federal law "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations omitted). The Court presumes the correctness of the fact-finding by the state court unless petitioner rebuts that presumption "by clear and convincing

---

[8] In his traverse, Petitioner asks the Court to "assess this case under the fundamental-fairness analysis," meaning that the Court would "examine[] the entire proceedings, including the strength of the evidence against the petitioner." (Doc. 29, p. 3.) In support, he cites *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002). *Id.* But the portion of *Le* Petitioner cites dealt with federal habeas review of a claim of prosecutorial misconduct. *See Le*, 311 F.3d at 1013. Although Petitioner raised a claim of prosecutorial misconduct in Ground 8 of his petition, that claim is procedurally defaulted for the reasons stated above and, as such, the Court may not reach its merits.

evidence." 28 U.S.C. § 2254(e)(1). *See also Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

Claims of ineffective assistance are analyzed under the test established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland*, "a defendant must show both [(1)] that his counsel's performance fell below an objective standard of reasonableness and [(2)] that the deficient performance prejudiced the defense." *United States v. Holloway*, 939 F.3d 1088, 1102 (10th Cir. 2019) (internal quotation marks omitted).

The United States Supreme Court has also explained:

> Establishing that a state-court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable application is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

## Analysis

**Ground 4**

The remaining, exhausted portion of Ground 4 consists of Petitioner's argument that his trial counsel provided

unconstitutionally ineffective assistance of counsel by failing to procure funding for and obtain expert witnesses in child interviewing techniques. (Doc. 1, p. 12.) Petitioner argues the merits of his ineffective assistance of counsel claim, i.e., that trial counsel's performance was unreasonable and his deficient performance prejudiced Petitioner. *Id.* at 35-37. As explained above, however, the relevant question in this matter "is not whether counsel's actions were reasonable," it "is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *See Harrington*, 562 U.S. at 105.

In its opinion on the effectiveness of trial counsel, the KCOA first articulated the applicable test under *Strickland* and Kansas cases adopting *Strickland*. *Sellers II*, 204 WL 2589785, at *1. It specifically noted that under *Strickland* and related Kansas cases, "[r]arely should counsel's representation be considered substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among multiple options." *Id.* at *1 (citing *Strickland*, 466 U.S. at 690-91). The KCOA continued:

> At the 60-1507 hearing, [trial counsel] testified he was familiar with experts knowledgeable about the proper ways to question a child alleged to have been the victim of sexual assault and the dangers of inducing or confirming false accusations through unduly suggestive or otherwise inappropriate examination techniques. He testified he had used such experts in other cases. But [trial counsel] concluded an expert in that field would have been of no help in Sellers' case. He cited M.R.C.'s age—13 years old—as a significant factor in his decision. Undue influence may be a danger with young children but typically not with teenagers. See *Hall v. State,* No.

109,168, 2014 WL 1096748, at *6-7 (Kan. App. 2014) (unpublished opinion); accord *State v. Cobb*, 336 S.W.3d 201, 211 (Mo. App. 2011). [Trial counsel] saw no markers indicative of overreaching or undue influence in how law enforcement officers questioned M.R.C. Likewise, [trial counsel] ultimately uncovered nothing persuasive to indicate M.R.C. was particularly susceptible to suggestion or would be prone to give a false statement because of intellectual deficits or psychological impairments.

Significant in that regard, [trial counsel] did file a pretrial motion requesting a psychological examination of M.R.C. The district court denied the motion. In reviewing a defense request for a psychological examination of the putative victim of a sex crime, the district court examines a series of factors: the witness' demonstrable "mental instability" and "lack of veracity"; whether the witness has lodged false allegations of sexual abuse against other persons; and indicators the witness may have an unusual understanding of "what it means to tell the truth." *State v. Berriozabal,* 291 Kan. 568, 581, 243 P.3d 352 (2010). The district court found insufficient reason to order an examination of M.R.C. On direct appeal, the court considered that ruling and found no error. *Sellers,* 292 Kan. at 353-56. The evidence presented on that motion did not indicate M.R.C. would have been disposed to give false information because of law enforcement interview techniques—further suggesting the futility of seeking out an expert in that area.

[Trial counsel] asked a representative of the Board of Indigents' Defense Services if money might be available to hire an expert and was told that would be unlikely given the nature of the case and the district court's denial of the psychological examination. We do not find the funding issue to be material here. [Trial counsel], a highly experienced trial lawyer, carefully considered the use of an expert on interviewing practices with young victims of sexual abuse and decided against doing so based solely on strategic considerations. Funding did not influence or even enter into [trial counsel's] fundamental conclusion that such an expert would be unhelpful.

In short, [trial counsel] made precisely the sort of informed strategic choice in weighing trial options that cannot be considered ineffective assistance of counsel

under *Strickland* and the Kansas authority adopting it.

Even if that decision were constitutionally suspect—
and we emphasize that it was not—Sellers has failed to
demonstrate some form of prejudice. He has not pointed to
any way in which the police questioning of M.R.C. appeared
to be improper or conceivably might have induced false
testimony. Absent some indication the questioning veered
off into that dangerous territory, an expert could not
and would not have offered testimony assisting Sellers'
defense, let alone affecting the outcome of the trial.

*Id.* at *2-3.

This analysis undermines Petitioner's argument in his traverse

that the KCOA "missed the point that *Strickland* . . . commands that

deference to strategic choices has always been tempered by a

requirement that the choices themselves be informed." (Doc. 29-1,

p. 15.) Petitioner does not explain what additional investigation

he believes his trial counsel should have undertaken before deciding

whether to obtain an expert on child interviewing techniques. *Id.*

at 13-17. Rather, he generally alleges that a competing expert would

have strengthened his defense and that trial counsel could not have

made a sound strategic decision not to obtain an expert witness

without first consulting with an expert witness. *Id.* at  13-17.

This logic is unpersuasive. As the KCOA noted, trial counsel

testified that he himself was familiar with experts on child

interviewing and had used them in other cases; he concluded that

such an expert would not benefit Petitioner's case. There is no

indication that the KCOA "missed the point" that effective

assistance of counsel involves competent investigation and

25

consideration of strategic avenues, nor is there any indication that the KCOA's holding that trial counsel made a proper strategic choice contrary to *Strickland*.

The KCOA applied the correct test under *Strickland* and its application of the test was not unreasonable. In other words, a reasonable argument can be made to support the KCOA's conclusion that Petitioner's trial counsel acted reasonably in his strategic choice not to obtain an expert on child interviewing. The Court thus denies relief on this ground.

**Ground 9**

In Ground 9, Petitioner argues that the aggregated effect of the constitutional violations that occurred during his trial violated his constitutional rights to a fair trial and to due process of law. (Doc. 1, p. 29.) The cumulative-error doctrine applies only when there are two or more constitutional errors. *Jackson v. Warrior*, 805 F.3d 940, 955 (10th Cir. 2015)(citing *Thacker v. Workman*, 678 F.3d 820, 849 (10th Cir. 2012)). Because the Court has found no constitutional error in this matter, Petitioner is not entitled to relief because of cumulative error.

**Conclusion**

For the reasons set out above, the Court will dismiss Grounds 1, 2, and 10 in accordance with Petitioner's agreement to do so. The Court further concludes that Ground 7 fails to state a claim on which federal habeas relief can be granted and that Ground 3, part

of Ground 4, and Grounds 5, 6, and 8 are subject to an anticipatory procedural default that Petitioner has not overcome. The remainder of Ground 4 and Ground 9 in its entirety fail on their merits and will be denied. Accordingly, the petition for writ of habeas corpus will be dismissed in part and denied in part.

Because the Court enters a decision adverse to Petitioner, it must consider whether to issue a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court identifies the specific issue that meets that showing. 28 U.S.C. § 2253. Moreover,

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The failure to satisfy either prong requires the denial of a COA. *Id.* at 485.

The Court concludes that its procedural rulings in this matter are not subject to debate among jurists of reason. In addition, the Court finds that Petitioner has not made a substantial showing of

the denial of a constitutional right. Therefore, the Court declines to issue a certificate of appealability.

**IT IS, THEREFORE, BY THE COURT ORDERED** the petition for habeas corpus is dismissed in part and denied in part. No certificate of appealability will issue.

DATED:  This 14th day of July, 2022, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW

U.S. Senior District Judge